Argued and submitted August 19, 2011, reversed and remanded May 9, 2012

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JAMES EDWARD MASSEY,
*Defendant-Appellant.*

Clackamas County Circuit Court
CR0911949; A145571

278 P3d 130

Ryan Scott argued the cause and filed the brief for appellant.

Jamie K. Contreras, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before Armstrong, Presiding Judge, and Haselton, Chief Judge, and Duncan, Judge.

DUNCAN, J.

**DUNCAN, J.**

Defendant appeals his conviction for driving under the influence of intoxicants (DUII). After defendant's trial to the court, the court read a jury instruction based on *State v. Miles*, 8 Or App 189, 492 P2d 497, *rev den* (1972) (the *Miles* instruction), to explain its reasoning in finding defendant guilty. Defendant appeals, arguing that the court erred in relying on the instruction. We agree. Therefore, we reverse and remand.

One evening around 8:00 p.m., a witness saw defendant, driving a pickup truck, pull out of a driveway onto Highway 26 and begin driving very erratically. The witness called 9-1-1 and followed defendant when he got off at the next exit. Defendant parked at a store and went inside. While he was inside, police officers came to the scene. When defendant came out of the store, an officer spoke with defendant and then arrested him and charged him with DUII.

At trial, the arresting officer testified that defendant was wearing dirty, disheveled clothing, his speech was thick and slurred, his eyes were glassy and bloodshot, he was stumbling and had a strange gait, and he smelled strongly of alcohol. Although the officer initially had difficulty communicating with defendant, whose hearing is significantly impaired, defendant eventually said that he had had a few drinks.

Four witnesses, including defendant, testified for the defense. Their testimony indicated that, at the time of the arrest, defendant, who was then 71 years old, was suffering from low blood pressure and dizziness as a result of medication that he had been prescribed. Defendant's daughter testified that defendant's doctors subsequently decreased his dosage and, as a result, his condition had improved significantly. Witnesses also testified that defendant's speech is sometimes slurred as a result of his hearing loss, that he walks with an unsteady gait and has poor balance as a result of back and leg injuries, and that physical exhaustion affects his mobility. Defendant testified that, on the day of his arrest, he had been cutting brush all day, he had been feeling progressively worse throughout the day, and he had one and one-half drinks before and during his dinner.

In closing argument, the prosecutor speculated that a combination of defendant's medical issues and alcohol caused his impairment:

"We also know that [defendant] was taking some medication that was adversely affecting him in May [when he was arrested]. That, of course, is problematic, and my suspicion is, is that whatever alcohol he consumed that evening was only complicated by the medical issues that he was already suffering from at that time."

In response, in his closing argument, defense counsel objected to that theory and referred to the *Miles* instruction: "[T]he prosecutor seemed to be getting near *Miles*—and no pun intended—I think we're miles away from a *Miles* instruction in this case." The court rejected defendant's argument that the *Miles* instruction was inapplicable, read the instruction, and explained its conclusion that defendant was guilty:

"*Now, contrary to what Counsel may have said, I think a Miles instruction would have been appropriate in this case, and let me read that to you so you understand where I'm going here.* It says, 'If you find from the evidence that the defendant was in such a physical condition that he was more susceptible to the influence of intoxicants than he would otherwise be, and as a result of being in that physical condition, because of the influence of a lesser quantity of intoxicants than it would otherwise take, he is still, nevertheless, under the influence of intoxicants.'

"* * * Now, I have no doubt in my mind that you were working hard on this occasion, but you, yourself, indicated that after you had been drinking and you got back in that truck, that you were woozy, and you shouldn't have been driving.

"And, my God, when we've got the testimony of an eyewitness, [that defendant veered across two lanes and back, onto the shoulder, almost hitting a pole], that's pretty bad driving, partner. That's pretty bad driving.

"Now, today * * *, I heard no mumbling. You may have been a quiet talker, but you're not a mumbler. I didn't see you stumble. I didn't see you—your speech was certainly not slurred; I understood every word that you said to me. I didn't see you shuffling. * * *

"* * * And, you know, [the officer] described what he saw, and he also described, you know, a really strong odor of alcohol, which indicates that you'd just recently drank, which is kind of exactly what you're telling us here.

"*Now, I think, given on any other occasions, you may have been able to have had three or four and not had any problem driving, but you certainly had a problem driving on this occasion.*"

(Emphasis added.)

Defendant appeals the resulting judgment, arguing that the trial court erred in applying the *Miles* instruction. This court has repeatedly held that, in order for that instruction to be proper, "there must be evidence that [the defendant's physical condition] made [the] defendant more susceptible to the effects of alcohol than he otherwise would have been[.]" *State v. Huck*, 100 Or App 193, 197, 785 P2d 785 (1990) (so holding with respect to the defendant's use of Vicodin, a controlled substance); *see also State v. Gibbs*, 193 Or App 296, 297, 89 P3d 1215 (2004) ("Giving a *Miles* instruction in the absence of [evidence that the defendant's physical condition, head trauma, made him more susceptible to the influence of alcohol] is reversible error."); *State v. Curtis*, 182 Or App 166, 169-70, 47 P3d 929, *rev den*, 335 Or 104 (2002) (same where the defendant's physical condition was fatigue); *State v. Roller*, 181 Or App 542, 546, 47 P3d 52 (2002) (reversing where trial court gave *Miles* instruction because "[t]here is a complete lack of evidence that suffering from the flu made [the] defendant more susceptible to the effects of alcohol"). Defendant correctly asserts that no such evidence is present in this case. Specifically, there is no evidence that defendant's physical condition, attributable to either his medication or his fatigue, rendered him more susceptible to the effects of alcohol. We agree with defendant that the trial court erred in relying on the instruction.[1]

---

[1] We note that, if defendant's medication was a controlled substance, the trial court's reliance on the *Miles* instruction in this case was also erroneous under *State v. McFeron*, 166 Or App 110, 999 P2d 470 (2000). Where, as here, the state proceeds against a defendant on an alcohol-only theory of DUII, the *Miles* instruction is never appropriate if the defendant's "physical condition" involves a controlled substance. *Id.* at 118-19. That is so because, in order for the state to rely on a theory that a defendant's condition was caused in part by a controlled substance, it must

The state does not dispute that, given that evidentiary void, the trial court's use of the *Miles* instruction was inapposite. Instead, it asserts that any error was harmless and, as a result, does not merit reversal. We disagree.

Insofar as the state argues that the trial court did not actually rely on the *Miles* instruction in its analysis, the court's explanation of its verdict, quoted above, demonstrates the opposite. The court began by saying, "let me read [the *Miles* instruction] to you so you understand where I'm going here" and reading the instruction. After summarizing the evidence, it concluded, "Now, I think, given on any other occasions, you may have been able to have had three or four and not had any problem driving, but you certainly had a problem driving on this occasion." That statement demonstrates that the court concluded—as instructed by *Miles*—that, on the day of the alleged DUII, defendant's physical condition made him more susceptible to the influence of alcohol than he normally was and, as a result, he was under the influence of alcohol at the time that he drove, even though he had consumed less alcohol than it would normally take to cause him to be under the influence of alcohol.

As we have explained in the context of a jury trial, in the absence of evidence that a defendant's physical condition made him more susceptible to the effects of alcohol, "the instruction [is] likely to mislead the jury to [the] defendant's prejudice and, therefore, it should not [be] given." *Huck,* 100 Or App at 197. The same is true where the trier of fact is the court. *See, e.g., Babler Bros. v. Pac. Intermountain,* 244 Or 459, 467, 415 P2d 735 (1966) ("When the record discloses that the jury applied the wrong law to the problem, the verdict cannot stand. Where an error of law is shown to have influenced the court in trying a case without a jury, reversal is equally necessary."). That the state adduced legally sufficient evidence to support the same outcome under the correct legal analysis is immaterial. *See id.; State v. Wilson,* 240 Or App 475, 483, 248 P3d 10 (2011) (reversing where the trial court made a legal error in finding the defendant guilty despite the fact that there was "sufficient evidence from which the trial

comply with the pleading requirement of ORS 813.010(2) by alleging that the defendant was under the influence of a controlled substance (or substances). *Id.*

court *could* have found" that the defendant was guilty (emphasis in original)).

Finally, the state argues that, if we reverse this case, we should "remand the case to the trial court for reconsideration to determine, based on the record already adduced, whether defendant was guilty of DUII." As authority for that argument, it cites *Wilson*, 240 Or App 475, and *State v. Andrews*, 174 Or App 354, 356, 27 P3d 137 (2001), *overruled in part on other grounds by State v. Rutley*, 202 Or App 639, 645, 123 P3d 334 (2005). However, in both of those cases, we reversed and remanded for a new trial. *Wilson*, 240 Or App at 484 ("[W]e reverse [the] defendant's conviction for second-degree theft and remand for a new trial."); *Andrews*, 174 Or App at 356 ("We reverse and remand for a new trial."). Therefore, in light of the trial court's erroneous reliance on the *Miles* instruction, we reverse and remand for a new trial.

Reversed and remanded.