Argued and submitted February 14, affirmed September 19, 2012

**LESTUR LANE BOSTWICK,**
*Petitioner-Respondent,*

*v.*

**Rick COURSEY,**
Superintendent,
Eastern Oregon Correctional Institution,
*Defendant-Appellant.*

Umatilla County Circuit Court
CV091094; A147963

287 P3d 1168

Ryan Kahn, Assistant Attorney General, argued the cause for appellant. With him on the briefs were John R.

Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Erin Galli argued the cause for respondent. With her on the brief was Chilton & Galli, LLC.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

SCHUMAN, P. J.

## SCHUMAN, P. J.

Petitioner was convicted, after a bench trial, of second-degree assault for hitting a pedestrian with his truck while driving under the influence of alcohol. He subsequently filed a petition for post-conviction relief in which he alleged that his trial counsel had provided constitutionally inadequate counsel by not asking the trial court to consider a conviction for assault in a lesser degree. The post-conviction court granted petitioner his requested relief—a new trial—upon concluding that his trial counsel had unreasonably failed to argue the lesser-included offenses and that petitioner was prejudiced by that failure. The state appeals that judgment,[1] arguing that a reasonable attorney could have pursued an "all or nothing" approach instead of asking the court to consider lesser-included offenses and, further, that petitioner failed to prove that he was prejudiced by trial counsel's decision. We affirm.

In 2007, petitioner was charged with second-degree assault, ORS 163.175, driving under the influence of intoxicants, ORS 813.010, and failure to perform the duties of a driver, ORS 811.705, all stemming from an incident in which petitioner's truck struck a pedestrian in a cross-walk. Petitioner waived his right to a jury trial, and the case was tried to the court.

At trial, the state offered the following evidence. On a February evening in 2007, David Gremmels was crossing a street in Central Point when petitioner made a right turn with his pickup and struck Gremmels in the crosswalk. An eyewitness reported that petitioner was "turning really fast" as if he were attempting to "beat a yellow light." Gremmels was thrown to the ground by the impact. Petitioner then swerved around him and drove into a nearby parking lot. After slowing down (and possibly stopping) for a few moments, petitioner peeled out and sped away from the scene. A witness followed petitioner and led police to a nearby location where petitioner was still driving his truck.

---

[1] Defendant is the superintendent of the correctional institute in which petitioner is imprisoned. For clarity, we refer to defendant as the state.

The officer stopped petitioner and asked him to get out of the truck. Petitioner struggled to locate the door handle but eventually complied. The officer detected a strong odor of alcohol coming from petitioner and also noticed that petitioner was swaying and using the truck's door for balance. The officer arrested petitioner, who subsequently told the officer that he had consumed a couple of beers at a nearby bar. A breath test showed that his blood-alcohol level was .11, considerably higher than the .08 that establishes presumptive intoxication.

At trial, petitioner himself offered a number of admissions about that February night. He testified that he had consumed two strong cocktails about an hour before the crash, and that, when he decided to drive, he knew that he was "probably" legally impaired but did not believe that he was "really that bad off." He also admitted that he knew the risks of drunk driving, having twice been convicted of driving under the influence, having undergone treatment as a result, and having worked as a professional driver.

Nonetheless, petitioner testified that the bigger problem that night was his windshield visibility. He testified that there was film on the windshield (from his heavy smoking) and that it had reached the point where he could not even see. Sunlight, he testified, had exacerbated the problem as he approached the intersection and that he "could not see [the traffic light] for the life of me."

According to petitioner, he knew after the crash that he had "screwed up" but did not believe that he had hit the pedestrian all that hard. He then contemplated all the trouble that he might be in as a result of the accident—in addition to drinking, he had marijuana on him, was uninsured, and had stolen plates on the truck—and so, after stopping for a second or two, he sped away. He admitted lying to the police about whether he knew he had hit anyone and also about the particular bar where he had been drinking.

During closing arguments, petitioner's counsel conceded (as petitioner had admitted in his testimony) that petitioner had committed the crimes of driving under the influence and "hit and run." Counsel focused, instead, on the charge of second-degree assault. That crime, as

alleged, required proof that petitioner "did unlawfully and recklessly, under circumstances manifesting an extreme indifference to the value of human life, cause serious physical injury to David Lawrence Gremmels, by means of a dangerous weapon, to-wit: a vehicle, by striking [him] with his vehicle." *See* ORS 163.175(1)(c). And, as to that charge, counsel further narrowed his argument to the "extreme indifference" element of the crime.[2] Counsel contended that the standard was a high one, requiring a "depraved mind" on the part of petitioner. He further argued that, although petitioner had behaved recklessly, his conduct did not rise to the higher level of "extreme indifference" under existing case law. Counsel argued that petitioner was therefore guilty of driving under the influence and "hit and run" only, and not second-degree assault. Notably, counsel did not contend that the trial court should consider convicting petitioner only of a lesser degree of assault that did not require, as an element of the offense, "extreme indifference to the value of human life." *Cf.* ORS 163.165 (third-degree assault); ORS 163.160 (fourth-degree assault).

The trial court found petitioner guilty of all charges. As for second-degree assault—and, specifically, "extreme indifference"—the trial court expressed concern with the subjective nature of the legal standard but ultimately found that it had been satisfied. The trial court explained:

"The question, I've been listening to the evidence and reviewing the evidence in my mind, that is most significant is did this conduct constitute circumstances manifesting extreme indifference to the value of human life. * * * [In *State v. Corpuz*, 49 Or App 811, 621 P2d 604 (1980) * * * [the court held] * * * that it's just—the person cares little about the death—the risk of death to another human being, cares little, has little care. Almost like I just don't give a damn, I'm gonna kill somebody, tough. And that certainly is—shows extreme indifference to the value of human life. And what's just short of that? I don't know what you get short of that. What's an average indifference to the value of human life or a little bit of indifference to the value of human life versus what's extreme? That's why when I came out to the bench after the noon recess, it's a sort of you

---

[2] Counsel briefed the question whether the victim suffered serious physical injury, but he did not argue that issue during closing.

know it when you see it almost. And that's a very tough standard because it's so subjective. I don't like it. I wish there were some easier way to define it, and there just isn't.

"Certainly, the level of knowledge of [petitioner], he drove, I think he said, for a living. People who drive for a living certainly have more knowledge of damage done by drivers period, whether they're impaired or not, than the rest of us who don't drive for a living. Add to that the treatment, diversion, whatever it was that [petitioner] went through in Arizona. Certainly there's a level of knowledge added to that. And I agree with [petitioner's trial counsel], any of us know today if we're cognizant of what's gone on in the world around us that driving under the influence is a very, very, dangerous business. People die every day as a result. And so the risk of death is terrible. Yet this manifesting extreme indifference to the value of human life is something more than that. And here [petitioner] pulls over into the parking lot. I'm still amazed, I don't know why he did that. I just don't know why he did that. And then he goes through this process of, 'Oh my god, I'm in trouble. I've been drinking, I don't have a license, stolen plates,' I think on the car, or stolen car, marijuana in the car, and he left. And of course at that point he's thinking of him, he's not thinking of the guy over on the side of the road. Or he might be thinking of the guy on the side of the road, but he's more important. * * *

"I don't—I don't like it because I'm so uncomfortable with it, but I believe that [petitioner] acted with an extreme indifference to the value of human life. * * * I just think the facts show an indifference to the value of human life which when I review the facts is pretty extreme."

For the second-degree assault conviction, the court sentenced petitioner to 70 months in prison and 36 months of post-prison supervision. Petitioner initially appealed, but later voluntarily dismissed that appeal.

Petitioner then filed his petition for post-conviction relief alleging, among other theories, that his trial counsel was constitutionally inadequate in failing to "request that the trial court consider lesser-included offenses to the charge of Assault in the Second Degree, including Assault in the Third Degree and Assault in the Fourth Degree, in spite of the fact that petitioner was entitled to consideration

of such lesser-included offenses."[3] Neither petitioner nor the state submitted direct evidence as to why trial counsel did not ask the court to consider a lesser-included offense. Rather, petitioner contended that, based on the record of the underlying trial proceedings, the evidence was sufficient to conclude that no reasonable attorney would have made such a tactical decision regarding lesser-included assaults, given that petitioner was already admitting to failing to perform the duties of a driver, a felony equally serious to third-degree assault. Petitioner argued:

> "And why one would subject one's client to a Ballot Measure 11 Assault 2 and not ask for a level 6 Assault 3, when you are already admitting a level 6, it's nonsensical.
> * * *
>
> "And there's an objective, too, right? It has to be reasonable. I can't just make any old decision. It has to be subjectively, I have to actually make a decision, and then it has to be reasonable.
>
> "And so even if the court were to agree with all the state's arguments that this is impermissible burden-shifting [to hold against the state the absence of evidence regarding a tactical decision], * * * when you get right down to it, there's no way to really color this as a reasonable tactical decision, to subject him to that kind of sentence, when you're already admitting.
>
> "This wasn't an all-or-nothing. Sometimes there's one charge, and the state will say, well, gosh, you know, trial counsel might have been going for all-or-nothing. This wasn't that. They were admitting a felony of equal seriousness. So I'd ask the court to consider that."

With respect to prejudice, petitioner argued that *Trotter v. Santos*, 212 Or App 473, 157 P3d 1233, *adh'd to on recons*, 214 Or App 696, 167 P3d 488, *rev den*, 343 Or 691 (2007), was "right on point" and that "trial counsel has to ask for a lesser included offense, and in the absence of some evidence that this was a reasonable tactical decision, relief is merited."

---

[3] Again, neither third-degree assault, ORS 163.165, nor fourth-degree assault, ORS 163.160, requires "extreme indifference."

The post-conviction court agreed with petitioner's arguments and entered a judgment in his favor, remanding the case to the circuit court for a new trial. The post-conviction court included the following findings in its judgment:

"Trial attorney did not request any lesser included offenses for the charge of Assault II.

"Assault III and Assault IV are lesser included offenses in this case.

"* * * * *

"There is no question that [petitioner] drove the car that injured [the victim]. He conceded the DUII [and] Hit and Run.

"Attorney's failure to request [lesser-included offenses] is inadequate. If it was strategic (no evidence) it was not a reasonable strategy. There was prejudice under *Trotter*. All or nothing would not be a reasonable strategy—an acquittal was not likely, but arguing against [a Measure 11 offense] would have been sound strategy."

(Internal lettering omitted.)

On appeal, the state argues that the post-conviction court erred in granting petitioner's requested relief, because (1) "a reasonable trial attorney would have been entitled to take an 'all or nothing' approach to lesser-included offenses—both as a general matter, and under the specific facts of petitioner's case" and "the absence of evidence about whether a particular act or omission of a trial attorney was based on strategy is attributable to the *petitioner*" (emphasis by the state); and (2) petitioner did not establish that the failure to ask the court to consider a lesser-included offense actually prejudiced petitioner. We are not persuaded by the state's contentions.

To obtain post-conviction relief on the basis of inadequate assistance of counsel under Article I, section 11, of the Oregon Constitution, a petitioner must "show, by a preponderance of the evidence, that his or her counsel did not exercise reasonable professional judgment or skill and that the petitioner suffered prejudice as a result." *Trotter*,

212 Or App at 476. As we recently explained in *Pereida-Alba v. Coursey*, 252 Or App 66, 70, 284 P3d 1280 (2012),

> "[o]ne of the things that reasonably competent criminal defense attorneys are expected to do on behalf of their clients is to consider whether to request instructions on lesser-included offenses. A failure to consider whether to make such a request in appropriate cases constitutes a failure to exercise professional skill and judgment."

Moreover, there are "circumstances in which no reasonably competent attorney would fail to make such a request." *Id.* at 70.

In *Pereida-Alba*, the petitioner was charged with and convicted of first-degree robbery, and he then sought post-conviction relief on the ground that his trial counsel was constitutionally inadequate in failing to request a jury instruction on the lesser-included offense of third-degree robbery. The record, like the one in this case, did not contain any direct evidence on whether the petitioner's criminal trial counsel considered whether to make such a request; nonetheless, the post-conviction court agreed with the petitioner's contention that "'no reasonably competent defense attorney would have failed to ask for one or more lesser[-]included [offense] instructions.'" *Id.* at 69 (brackets in *Pereida-Alba*).

On appeal, we held that, despite the lack of direct evidence regarding trial counsel's decision-making process, the record nonetheless was "sufficient to support a finding that the attorney did not consider whether to do that and, hence, failed to exercise reasonable professional skill and judgment." *Id.* at 70. We relied on the facts that "the post-conviction court could find that it was highly likely that the jury would convict petitioner of first-degree robbery, particularly when the only charge before the jury was first-degree robbery"; that the difference between sentences for first- and third-degree robbery was great; and that an instruction on a lesser-included offense would not have compromised the defense attorney's ability to defend against the greater charge. For those reasons, "[t]he upshot [was] that there was no evident downside to petitioner from requesting an instruction on third-degree robbery and a significant potential benefit to him from doing so." *Id.* at 71. In that circumstance, we held, the "post-conviction court

reasonably could infer that the defense attorney's failure to request [the lesser-included instruction] was attributable to the attorney's failure to consider whether to make such a request"; "[h]ence, the post-conviction court did not err in concluding that the attorney had failed to exercise reasonable professional skill and judgment in representing petitioner." *Id.*

Here, too, there is an implicit finding by the post-conviction court that petitioner's counsel did not actually consider whether to request a lesser-included instruction— implicit in the post-conviction court's statement that there was "no evidence" that the decision was strategic and in its ultimate conclusion that petitioner's attorney performed inadequately. And this case, if anything, presents an even stronger record than *Pereida-Alba* for concluding that trial counsel never weighed the costs and benefits of arguing lesser-included offenses.

As previously noted, petitioner was charged with three offenses. The most serious of the three, second-degree assault, was a potential Ballot Measure 11 offense that carried a 70-month mandatory minimum sentence. It was the only offense petitioner really challenged; the other two charges he essentially conceded during closing argument.[4] Had petitioner's counsel asked the court to consider the lesser-included offense of third-degree assault, he would have exposed petitioner to a Class C felony, ORS 163.165(2) (2005), with a crime category 6 on the Crime Seriousness Scale for sentencing purposes, OAR 213-017-0006(14).[5] Based on his criminal history, his presumptive sentence for that crime would have been 15 to 18 months in prison.

---

[4] Petitioner's trial counsel argued:

"[T]his gets back to the recklessness, was he reckless that day drinking and driving? Yes. Not keeping a proper lookout for Mr. Gremmels? Yes, that's reckless, clearly. Clearly reckless. And then after he hits him, he runs. Hit and run. But again, I don't see how you get to the next step of extreme indifference unless you can absolutely say beyond a reasonable doubt he didn't care if there was anybody in that crosswalk * * *.

"Then does he panic? Yes. He panics and takes off and again we have a hit and run statute to cover that, a felony, a serious felony, especially in his case."

[5] Later, the legislature amended the third-degree assault statute to elevate the crime to a Class B felony in the case of drunk driving, and elevated the crime seriousness to category 8. Or Laws 2009, ch 660, § 39; Or Laws 2009, ch 660, § 40.

In the abstract, exposing one's client to a Class C felony is no small consideration. But the circumstances here were different. Petitioner's counsel made a tactical decision during closing argument—something akin to a "lesser offense" argument—by conceding that petitioner's conduct violated, and was adequately punished by, statutes *other than* second-degree assault. One of the two charges that petitioner effectively conceded—failure to perform the duties of a driver (or, "hit and run" as the parties referred to it below)—was a Class B felony, ORS 811.705(2)(b), with a category 8 seriousness score for sentencing purposes, ORS 811.707; OAR 213-017-0004. Thus, by the time of closing argument, it was virtually ensured that petitioner would be convicted of a crime that carried a stiffer penalty than the lesser-included offense of third-degree assault. Under those circumstances, there was little if anything to lose by requesting that the court consider that lesser-included offense, and much to gain by avoiding a mandatory Ballot Measure 11 sentence of 70 months for second-degree assault.

On this record, and particularly in light of trial counsel's concession regarding "hit and run," the most likely inference is the one that we presume the post-conviction court drew: that petitioner's counsel simply did not consider asking the trial court to convict petitioner of a lesser degree of assault instead of second-degree. In failing to consider that request, petitioner's counsel failed to exercise reasonable professional skill and judgment in representing petitioner. *Krummacher v. Gierloff*, 290 Or 867, 875, 883, 627 P2d 458 (1981) ("Errors which result from a failure to use the professional skill and judgment for which the lawyer is employed cannot be characterized as tactical choices."); *Pereida-Alba*, 252 Or App at 71 (where there was "no evident downside to petitioner from requesting an instruction on third-degree robbery and a significant potential benefit to him from doing so[,]" the failure to consider requesting an instruction on the lesser-included offense falls below the reasonable professional skill and judgment expected of defense attorneys).

That leaves the question of prejudice. The post-conviction court concluded that "[t]here was prejudice under *Trotter*," a case in which we held that the failure to request

jury instructions on a lesser-included offense was prejudicial to the petitioner. On appeal, the state contends that the post-conviction court's prejudice analysis was flawed for two reasons: (1) *Trotter* applied a "harmless error" standard instead of determining, as it should have in a post-conviction case, whether counsel's error had a tendency to affect the verdict; and (2) even if *Trotter* is correctly analyzed, this case is distinguishable because it was tried to the court and not a jury.

As for the first argument, we are not persuaded that our analysis in *Trotter* was incorrect. In *Trotter*, the state argued that the petitioner had not been prejudiced by his counsel's failure to request jury instructions on lesser-included offenses of menacing and attempted first- and second-degree assault because "the jury could have considered the lesser offenses only if it first found petitioner not guilty of attempted murder [the greater offense]," which the jury had not done. 212 Or App at 476. We rejected that argument, observing that we had also rejected it in the past on direct appeal in cases such as *State v. Moses*, 165 Or App 317, 997 P2d 251, *rev den*, 331 Or 334 (2000), and *State v. Leckenby*, 200 Or App 684, 117 P3d 273 (2005). In those direct appeal cases, which involved harmless error analyses, we recognized that a jury that has a complete statement of the law might decide a case differently from one that lacks that complete statement. We then built on that observation and concluded that "failure to request the instruction was prejudicial to petitioner." 212 Or App at 478.

Nothing in *Trotter* departed from the correct test for prejudice in post-conviction cases: whether counsel's failure had a tendency to affect the result of the trial. *Burdge v. Palmateer*, 338 Or 490, 492, 112 P3d 320 (2005). And, applying that test here, we conclude that trial counsel's failure to ask the court to consider any lesser-included offense had a tendency to affect the verdict in this case. As recognized in *Trotter* and also in harmless error cases, a factfinder might view the evidence differently when given a complete and correct instruction of the law. That is particularly true when, as in this case, the factfinder has misgivings about the legal standard for the greater offense. For that reason, counsel's deficiency was an error that undermines confidence in the verdict.

Nor are we persuaded that counsel's error takes on a different quality simply because it occurred during a bench trial. We have repeatedly declined invitations to treat the deliberations of trial courts and juries differently, unless there is some cogent reason for doing so. *E.g.*, *State v. Massey*, 249 Or App 689, 693, 278 P3d 130 (2012) (trial court and jury equally likely to be misled, and the defendant thereby prejudiced, by applicability of a *"Miles* instruction"* in the absence of evidence that a defendant's physical condition made him more susceptible to the effects of alcohol); *State v. Bahmatov*, 244 Or App 50, 54, 260 P3d 592 (2011) (explaining that we have previously rejected the state's arguments that "a trial court, as opposed to a jury, is less likely to abdicate [its] legal duty to make independent credibility findings because of a misplaced aura of reliability or validity of expert witnesses" (internal quotation marks omitted)). Here, the state has not advanced any persuasive reason for evaluating the effect of the error differently simply because the factfinder was the court. Neither the nature of the issues nor the trial court's expressed reasoning suggests that its deliberations as a factfinder were any less influenced by the lack of a complete statement of the law concerning the charged conduct. If anything, we know on this record that the trial court actually considered "extreme indifference" to be a close issue—one that the court may well have viewed differently in light of a complete statement of the law.[6]

---

[6] The state suggests that the distinction between a bench trial and a jury trial is important because

"a jury cannot practically convict a defendant of a lesser offense unless the court gives instructions, [but] a trial judge can. *See* ORS 136.465 ('In all cases, the defendant may be found guilty of any crime the commission of which is necessarily included in that with which the defendant is charged * * *')."

We do not understand how, in this case, that possibility helps the state. There is no indication that the trial court entertained the possibility of entering a judgment for a lesser-included offense or was even aware of that possibility, and we would expect a trial court to at least raise the matter with the parties before independently considering convicting a defendant of a crime that neither the state nor the defendant has ever mentioned. *See State v. Barrie*, 227 Or App 378, 384, 206 P3d 256 (2009) (where "unique confluence of factors" each "reinforc[ed] the conclusion that defendant lacked actual notice that the lesser-included offense was under consideration by the trial court," the "overriding principles of due process must supplant the usually supportable legal fiction of ORS 136.465").

In sum, we are not persuaded that the post-conviction court erred in granting petitioner relief, in light of his trial counsel's constitutionally inadequate assistance. We therefore affirm the judgment of the post-conviction court.

Affirmed.