Argued and submitted July 31, 2018; conviction on Count 2 reversed and remanded, otherwise affirmed December 18, 2019

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MATTHEW COREY BASHAM,
*Defendant-Appellant.*

Yamhill County Circuit Court
14CR10143; A162939

456 P3d 658

Defendant appeals from a judgment of conviction for driving under the influence of intoxicants, contending that the trial court erred in providing a *Miles* jury instruction. *Held*: The trial court erred. The record contained no evidence tying defendant's prior injuries and tiredness to an increased susceptibility to the effects of an intoxicating substance. Giving the *Miles* instruction in the absence of such evidence was likely to mislead the jury and was, therefore, reversible error.

Conviction on Count 2 reversed and remanded; otherwise affirmed.

Cynthia L. Easterday, Judge.

Mark J. Kimbrell, Deputy Public Defender, argued the cause for appellant. On the briefs were Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Sara F. Werboff, Deputy Public Defender, Office of Public Defense Services.

Joanna L. Jenkins, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, and Powers, Judge, and Mooney, Judge.*

MOONEY, J.

Conviction on Count 2 reversed and remanded; otherwise affirmed.

_____

* Mooney, J., *vice* Garrett, J. pro tempore.

## MOONEY, J.

Defendant appeals from a judgment of conviction for driving under the influence of intoxicants (DUII),[1] raising four assignments of error. We reject his second, third, and fourth assignments without discussion and write only on the first assignment in which defendant contends that the trial court erred in providing a *Miles*[2] jury instruction. We agree that the record was void of evidence to support that instruction and therefore reverse and remand for a new trial.

We review jury instructions for errors of law. *State v. Pierce*, 235 Or App 372, 374, 232 P3d 978 (2010). "In determining whether an instructional error requires reversal, we assess potential prejudice by considering the jury instructions as a whole." *Id.* "[A]n instruction is appropriate if it correctly states the law and is supported by evidence in the record, when the evidence is viewed in the light most favorable to the party requesting the instruction," in this case the state. *State v. Ashkins*, 357 Or 642, 648, 357 P3d 490 (2015). We state the facts consistently with that standard.

On the evening of June 7, 2014, a civilian reported that he observed defendant driving abnormally. Officer Elliott responded to the report and pulled defendant over for speeding. When Elliott contacted defendant, he asked for defendant's driver's license, registration, and proof of insurance. While speaking with defendant, Elliott noticed that defendant's pupils were "very constricted," he had "visible open sores" on his arm, and his movements were "slow and kind of deliberate." Elliott believed that defendant was under the influence and requested that he perform field sobriety tests (FST). Defendant agreed and performed the horizontal gaze nystagmus test (HGN), the walk-and-turn test, and the one-leg-stand test. Defendant did not exhibit any "clues" of intoxication on the HGN test or the one-leg-stand test. On the walk-and-turn test, however, defendant exhibited seven of eight clues of intoxication. Based on his observations of defendant and defendant's performance

---

[1] Defendant was also convicted of possession of a controlled substance.

[2] *See State v. Miles*, 8 Or App 189, 492 P2d 497 (1972); UCrJI 2708.

during the FSTs, Elliot believed that defendant "was under the influence of an intoxicant and that he was impaired." During the stop, Elliot also discovered that defendant was wearing a Fentanyl patch and that there were prescription pill bottles for hydrocodone-acetaminophen and oxycodone-acetaminophen in his car. Elliott arrested defendant and took him to the police station, where Detective McMullen performed a drug recognition expert (DRE) evaluation. McMullen ultimately concluded that defendant was "too impaired to operate a vehicle."

A urine test showed the presence of methamphetamine and its metabolite, amphetamine; hydrocodone and its metabolite, dihydrocodeine; gabapentin; and methocarbamol. Edgardo Basaca, a forensic scientist with the Oregon State Police Forensic Laboratory, testified that gabapentin and methocarbamol are central nervous system (CNS) depressants, methamphetamine is a CNS stimulant, and hydrocodone, and its metabolite dihydrocodeine, are narcotic analgesics.

After the state rested, defendant testified that he was injured in a car accident in 2004, which affected his ability to walk and balance, that he had only slept "for a couple of hours" the night before he was arrested, and that he "just didn't feel right" when he woke up. He worked that day and, on his way home, he felt tired and thought about stopping to sleep, but ultimately chose not to stop.

At the close of evidence, the trial court informed the parties that it would provide Uniform Criminal Jury Instruction 2708, also known as a *Miles* instruction, which provides:

> "If you find from the evidence that [defendant] was in such a physical condition that he was more susceptible to the influence of intoxicants than he would otherwise be, and as a result of being in that physical condition [defendant] became under the influence by a lesser quantity of intoxicants than it would otherwise take, [defendant] is nevertheless under the influence of intoxicants."

Defendant objected, arguing that, although defendant had a physical condition that made him, in certain circumstances, look like he may be more affected, defendant

was not actually more affected. "[T]here was no testimony by any of the witnesses that said that any of these drugs that we're talking about in this trial would cause him to be more susceptible to being affected by the drug because of his physical condition." The state responded that the "physical condition that the defendant had was his prior injuries from the crash in 2004, and also the fact that he *** was very tired, had been up all night and then worked all day; so he did have a condition that would have made him more susceptible." The trial court overruled defendant's objection and provided the jury instruction. The jury ultimately found defendant guilty.

Defendant appeals, contending that the trial court erroneously provided the *Miles* instruction. For a *Miles* instruction to be proper,

> "'there must be evidence that [the defendant's physical condition] made [the] defendant more susceptible to the effects of alcohol than he otherwise would have been[.]' *State v. Huck*, 100 Or App 193, 197, 785 P2d 785 (1990) (so holding with respect to the defendant's use of Vicodin, a controlled substance); *see also State v. Gibbs*, 193 Or App 296, 297, 89 P3d 1215 (2004) ('Giving a *Miles* instruction in the absence of [evidence that the defendant's physical condition, head trauma, made him more susceptible to the influence of alcohol] is reversible error.'); *State v. Curtis*, 182 Or App 166, 169-70, 47 P3d 929, *rev den*, 335 Or 104 (2002) (same where the defendant's physical condition was fatigue); *State v. Roller*, 181 Or App 542, 546, 47 P3d 52 (2002) (reversing where trial court gave *Miles* instruction because '[t]here is a complete lack of evidence that suffering from the flu made [the] defendant more susceptible to the effects of alcohol')."

*State v. Massey*, 249 Or App 689, 692, 278 P3d 130 (2012), *rev den*, 353 Or 203 (2013) (alterations in original).

Defendant agrees that the record shows that defendant was tired, had physical ailments, and took medication to treat those ailments. Defendant argues, however, that "there is no evidence in the record to support an inference that the foregoing physical conditions made defendant more susceptible to the effects of intoxicants. The evidence shows only that the physical conditions existed." The state responds that there was such evidence and specifically

argues that "the evidence showed that defendant had ingested controlled substances from two different drug categories—narcotic analgesics and CNS stimulants," and that defendant's expert "testified that being on the down side of methamphetamine intoxication can enhance the effects of the narcotic analgesic." Therefore, according to the state, "one theory that the jury was entitled to consider, was the possibility that defendant was experiencing the down side of methamphetamine intoxication at the time of driving, which enhanced, or had an additive effect when combined with the narcotic analgesics" in defendant's system. To support that argument, the state points to the following colloquy between defense counsel and a defense expert, Meneely:

"[Defense Counsel]: Okay. We were talking about methamphetamine, the crash. The crash is actually the result of the methamphetamine no longer affecting the person, isn't it? Their body's like going, whoa, because they were more active?

"[Meneely]: That's probably more difficult to answer, because it does cause some level of sedation, and if you relate that to an effect, it is an effect; but associated with that is very unique clinical symptoms: the constricted pupils, the below-normal blood pressure, below-normal body—not body temperature, but blood pressure as well.

"[Defense Counsel]: So if somebody's crashing from methamphetamine they're going to have a lower blood pressure and a lower what?

"[Meneely]: Pulse.

"[Defense Counsel]: Pulse. So if somebody's crashing from methamphetamine, it looks more like an analgesic, right?

"[Meneely]: Correct.

"[Defense Counsel]: So it's not offsetting the effects of narcotic analgesic if they're crashing; it's actually enhancing the effects?

"[Meneely]: Well, theoretically it could."

Defendant responds that the state advances a new argument for the first time on appeal, that defendant's withdrawal from methamphetamine is *the* physical condition

that increased his susceptibility to narcotics, rather than defendant's prior injuries and tiredness. We agree that the state's argument on appeal is qualitatively different from the one it advanced below. In its closing argument, the state referred to Meneely's testimony as it discussed the various controlled substances involved in the case, and it even mentioned the signs and symptoms of methamphetamine "on the upswing" and "when a person is crashing." But the state's argument was that the jury should infer from the presence of several controlled substances that defendant was impaired by at least one of them. The state did not argue, as it does now, that defendant was more susceptible to the effects of the narcotics because he was "crashing" off methamphetamines.

Looking to the physical conditions advanced before the trial court—defendant's prior injuries and tiredness—the record contains no evidence tying those conditions to an increased susceptibility to the effects of an intoxicating substance. Giving the *Miles* instruction in the absence of such evidence was likely to mislead the jury and is, therefore, reversible error.

Conviction on Count 2 reversed and remanded; otherwise affirmed.