Argued and submitted April 29, reversed and remanded June 29, 2011

### STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

### PAVEL V. BAHMATOV,
*Defendant-Appellant.*

Multnomah County Circuit Court
070934261; A140266

260 P3d 592

Stephanie J. Hortsch, Deputy Public Defender, argued the cause for appellant. With her on the briefs was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Michael A. Casper, Assistant Attorney General, argued the cause for respondent. On the answering brief were John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Denis M. Vannier, Assistant Attorney General. On the supplemental answering brief were John R. Kroger, Attorney General, Mary H. Williams, Solicitor General, and Denis M. Vannier, Assistant Attorney General.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Edmonds, Senior Judge.

HASELTON, P. J.

## HASELTON, P. J.

Defendant, who was found guilty following a trial to the court on various sexual offenses, appeals. He contends that (1) the trial court erred in denying, in part, his motion to suppress inculpatory statements that he made during police interrogation; (2) the admission of a physician's expert diagnosis, in the absence of diagnostic physical findings, that complainant had been sexually abused constituted plain error under *State v. Southard*, 347 Or 127, 218 P3d 104 (2009); and (3) the admission of the physician's explanation for why she made that diagnosis was "an impermissible comment on the credibility of [complainant]" and plainly erroneous under *State v. Lupoli*, 348 Or 346, 234 P3d 117 (2010). For the reasons that follow, we reject defendant's first contention, but conclude, with regard to the remaining contentions, that, under *Southard* and *Lupoli*, the admission of the expert's diagnosis of sexual abuse and her explanation of the basis of that diagnosis was plainly erroneous and exercise our discretion under *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382 n 6, 823 P2d 956 (1991), to remedy those errors. Accordingly, we reverse and remand.

A detailed description of the facts concerning defendant's conduct would not benefit the bench, the bar, or the public. It is sufficient to note that, before his arrest and without receiving *Miranda* warnings, defendant, a 15-year-old Russian immigrant, was questioned by two police officers in the courtyard of the apartment complex where he lived with his family concerning allegations that he had engaged in conduct constituting various sexual offenses with a five-year-old girl whom his mother had babysat. At some point, one of the officers told defendant, "Don't wanna to go to jail—tell me the truth . . . ." Both before and after that remark, defendant made inculpatory statements in response to the officers' questions.

Defendant moved to suppress his statements, contending that he was in compelling circumstances during the questioning and, thus, should have received *Miranda* warnings. The trial court granted the motion, in part, reasoning that the officer's statement described above was "a threat

under all the circumstances here" and that, when the statement was made, "the circumstances became compelling and *Miranda* warnings were required." The trial court thus suppressed the statements that defendant made after the officer's threat but otherwise denied defendant's motion.

Thereafter, defendant waived his right to a jury trial, and the case was subsequently tried to the court. During the state's case-in-chief, complainant testified regarding defendant's conduct. Additionally, complainant's mother and the investigating officer testified. The state did not offer any eyewitness testimony or forensic evidence to corroborate the abuse.

The state did, however, offer testimony by Dr. Linda Lorenz, a pediatrician with CARES Northwest. Lorenz testified that "[her] diagnosis was that [complainant] had been the victim of sexual abuse." Although there were no diagnostic physical findings of abuse, Lorenz explained that her diagnosis was based on a number of factors, including (1) complainant's use of "[a]ge-appropriate language"; (2) "a number of details in [complainant's] interview that were *convincing*"; (3) the consistency of complainant's disclosures; (4) complainant's disclosures concerning the abuse of others; and (5) the lack of "any reason why [complainant] would make this up[.]" (Emphasis added.) Further, Lorenz noted that, in this case, "law enforcement had provided us with information of a confession that [defendant] had made. That's an important piece towards the diagnosis."

Defendant also testified at trial. He denied that he had engaged in the alleged conduct. Further, he indicated that he made the inculpatory statements during questioning by the officers "so they would leave me alone, because I couldn't take it any more."

The trial court found defendant guilty, noting that the "evidence in this case is very, very strong." Defendant appeals the resulting judgment.

As noted, defendant contends that the trial court erred in denying his motion to suppress his statements because the officers' "failure to administer *Miranda*-like warnings violated defendant's state and federal rights

against self incrimination[.]" We reject defendant's contention without extended discussion, noting only that, under the circumstances, the trial court properly suppressed the inculpatory statements that defendant made after the officer threatened to take him to jail unless he told the truth because, at that point, defendant was in compelling circumstances necessitating *Miranda* warnings.

With regard to defendant's remaining contentions, we agree that the admission of Lorenz's diagnosis of sexual abuse in the absence of physical findings and her explanation about why she made that diagnosis constituted plain error. *See Lupoli*, 348 Or at 362 (reasoning that the expert's diagnosis of sexual abuse, in the absence of physical evidence, "necessarily was based on her assessment of the child's believability"); *Southard*, 347 Or at 142 (holding that, generally, a diagnosis of sexual abuse, in the absence of any physical evidence of abuse, is not admissible under OEC 403). Accordingly, the issue reduces to whether we should exercise our discretion under *Ailes* to remedy those errors.

The state's predominant contention in that regard is that we should not exercise our *Ailes* discretion because, in this case, "any error was harmless." In advancing that contention, the state emphasizes that this case was tried to the court rather than a jury. According to the state, a trial court, as opposed to a jury, is "less likely to abdicate [its] legal duty to make independent credibility findings because of a 'misplaced aura of reliability or validity' of expert witnesses." (Quoting *Southard*, 347 Or at 140-41.) We have previously rejected the state's abstract proposition in that regard. *See, e.g.*, *State v. Almanza-Garcia*, 242 Or App 350, 255 P3d 613 (2011).

Further, the state also contends that, regardless of any distinction between a court trial and a jury trial, we should decline to exercise our discretion because the evidence of defendant's guilt is "overwhelming." In that regard, the state emphasizes the combination of complainant's testimony at trial and defendant's inculpatory statements to the police. The state's characterization of the evidence, however, fails to acknowledge other arguably controverting evidence at trial. For example, although defendant testified that the

unlawful contact did not occur, as we have noted, several of his inculpatory statements to the police were part of the record before the court. Further, complainant testified that one of defendant's sisters—who was about the same age as complainant—was present at the time that defendant engaged in the alleged conduct.[1] However, that sibling did not testify at trial, the record before the court included evidence that the sibling was evaluated at CARES Northwest, and the written assessment indicates that the sibling "made no statements that were concerning for physical or sexual abuse." Moreover, as noted, there was no eyewitness testimony or forensic evidence to corroborate the abuse.

In other words, this case reduced to a swearing contest in which a determination of credibility was paramount. The trial court was required to make multiple credibility determinations, and we cannot tell how the testimony of the physician affected those determinations. Under those circumstances, the physician's diagnosis of sexual abuse and her description of the reasons that she made that diagnosis could have been material and probative of that determination.

In *State v. Childs*, 243 Or App 129, 131, 259 P3d 77 (2011), we recently declined to exercise our *Ailes* discretion where, *inter alia*, the trial court *explicitly noted* the "relative insignificance of the physician's diagnosis" in its decision. However, as we explained in *State v. Potts*, 242 Or App 352, 353, 255 P3d 614 (2011), "in cases such as this, which essentially involve a swearing contest between the victim and [the] defendant, even where the court does not, in explaining its verdict, specifically discuss this type of expert testimony, 'that does not mean the court did not consider the evidence.' " (Quoting *State v. Davilia*, 239 Or App 468, 244 P3d 855 (2010).)

Here, although the trial court indicated that the evidence was "very, very strong," the court did not discuss the expert testimony in explaining its verdicts. As in *Potts*, under the circumstances of this case, we cannot conclude that there

---

[1] There is also evidence in the record that complainant reported that she had observed defendant having "sex" with his two younger female siblings.

was little likelihood that the erroneously admitted evidence affected the verdicts. Accordingly, and for the reasons stated in *State v. Merrimon*, 234 Or App 515, 520-22, 228 P3d 666 (2010), and *State v. Lovern*, 234 Or App 502, 512-14, 228 P3d 688 (2010), we exercise our discretion to correct those errors.

Reversed and remanded.