Argued and submitted June 8, 2011, reversed and remanded June 27, 2012

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CHARLES JOHN JOSEPH HOLLYWOOD,
*Defendant-Appellant.*

Washington County Circuit Court
C082970CR; A143885

282 P3d 944

Anne Fujita Munsey, Senior Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Matthew J. Lysne, Assistant Attorney General, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before Brewer, Presiding Judge, and Haselton, Chief Judge.*

BREWER, P. J.

---

* Haselton, C. J., *vice* Gillette, S. J.

### BREWER, P. J.

Following a jury trial, defendant was convicted of one count of first-degree rape and two counts of first-degree sexual abuse of a child, S. D. On appeal, defendant contends that it was plain error, under *State v. Lupoli*, 348 Or 346, 234 P3d 117 (2010), for the trial court to have admitted a diagnosing nurse-practitioner's testimony, with respect to S. D., that "there is no lying going on about what she is telling us in this evaluation."[1] We agree, and we exercise our discretion to correct the error. We reverse and remand.

We set out only those facts that are necessary to address the parties' arguments. Defendant was a friend of S. D.'s family. Over a period of time when she was nine years old, S. D. disclosed to various relatives that defendant had sexually abused her. S. D.'s mother took her to a hospital emergency room for a medical examination, which led to her further evaluation by several health care professionals, including representatives of CARES, a child abuse assessment center. None of the examinations disclosed any physical evidence of sexual abuse. Among the CARES evaluators was Reilly, a pediatric nurse-practitioner. Reilly did not perform a medical examination, but she did interview S. D., who told Reilly that "[defendant] was touching me in the wrong places." Reilly learned that S. D. was taking medication for ADHD; was on an individual education plan in school; was delayed in reading, writing, and math; and was in speech therapy. Reilly explained that S. D. had difficulty with timing in sequence in recounting the abuse but that "doesn't mean she's lying about something, she's just not capable of framing it in that context." Reilly then testified to her diagnosis that S. D. had been sexually abused.

At this point, we briefly digress to set the stage for the testimony that followed. Before trial, defendant had filed a motion *in limine* to permit him to impeach S. D. and a CARES investigator with evidence that the Department of

---

[1] In additional assignments of error, defendant challenges as plain error the trial court's admission of two expert medical diagnoses of child sexual abuse and related testimony, as well as the court's exclusion of certain impeachment evidence. In view of our disposition of defendant's first assignment of error, we decline to address his remaining challenges.

Human Services (DHS) had become involved with the family when S. D. and her sister told school staff that their father had thrown them against the wall and that the girls had later admitted that they had fabricated that story. Defendant argued in support of the motion that, if the CARES investigator were allowed to give a diagnosis in this case, "which we don't think she'd be allowed to do * * * we should be able to cross-examine her concerning the basis of that diagnosis." The trial court ruled that, if the state adduced evidence of a sexual abuse diagnosis from a CARES professional, then defendant would be allowed to cross-examine the witness regarding the alleged previous recantation. The court reserved any ruling on whether defendant otherwise would be entitled to adduce evidence concerning the recantation.

Pursuant to the trial court's pretrial ruling on defendant's motion *in limine*, after eliciting the sexual abuse diagnosis, the prosecutor asked Reilly "how" or "why," in light of the alleged recantation, she nevertheless had made such a diagnosis in this case. Reilly explained that children often recant allegations of abuse for various reasons. She concluded:

"But, in this case, what we know about [S.D.], she does not have a problem with lying; in fact, she's not taking back anything that she said to us, to [another examining physician], or to her mother about abuse by [defendant]. She's very consistent in those core details.

"So, there is no lying going on about what she's telling us in this evaluation."

Defendant's counsel did not object to the foregoing testimony, and the trial court did not strike it.

An error is plain if it is a legal error that is obvious or not reasonably in dispute and the court need not go outside the record or select among competing inferences to discern it. *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990). If we conclude that an asserted error is plain, we must determine whether to exercise our discretion to address the error. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382, 823 P2d 956 (1991). Under Oregon law, "a witness, expert or otherwise, may not give an opinion on whether he believes a witness is telling the truth." *State v. Middleton*, 294 Or 427, 438, 657

P2d 1215 (1983); *see State v. Milbradt*, 305 Or 621, 629-30, 756 P2d 620 (1988) ("[t]he assessment of credibility is for the trier of fact" and an "opinion that a person is not deceptive, could not lie without being tripped up, and would not betray a friend" is tantamount to an opinion on credibility and inadmissible); *see also State v. Keller*, 315 Or 273, 285, 844 P2d 195 (1993) ("[A] witness may not testify about the credibility of another witness."). "Applying that principle is a straightforward matter when one witness states directly that he or she believes another witness, or that the other witness is honest or truthful. However, statements that fall short of such overt vouching also may be impermissible." *Lupoli*, 348 Or at 357; *see also State v. Ferguson*, 247 Or App 747, 271 P3d 150 (2012) (witness's statement that he would not have called the police if he had not believed complaining witness was an impermissible comment on credibility).

The state argues that the trial court did not plainly err in failing *sua sponte* to strike Reilly's quoted testimony. First, the state argues that the prosecutor had not invited Reilly's challenged testimony in response to her general "how" or "why" question and that the trial court had no duty *sua sponte* to strike such unsolicited testimony after it was given. Second, the state argues that the challenged testimony was "not so much a comment on S. D.'s credibility as it was an explanation as to why S. D.'s prior recantation did not contradict Reilly's diagnosis." It follows, the state reasons, that the trial court did not err in failing to strike it in the absence of an objection or motion to strike.

We disagree with those arguments. First, the prosecutor's open-ended question about why Reilly's sexual abuse diagnosis was not affected by S. D.'s recantation of physical abuse by her father risked—indeed it logically countenanced—precisely the type of explanation that Reilly gave in response. In the end, Reilly's diagnosis hinged on her perception of S. D.'s credibility, and it was foreseeable that, in response to the prosecutor's question, she would return to that foundation for her opinion. Nor is the plainness of the error affected by the fact that the challenged testimony was not explicitly elicited by the prosecutor's question. *See Milbradt*, 305 Or at 630 ("We suggest in the future that if counsel attempts to elicit [testimony commenting on the

credibility of a witness] the trial judge, *sua sponte*, should summarily cut off the inquiry before a jury is contaminated by it."); *State v. McQuisten*, 97 Or App 517, 520, 776 P2d 1304 (1989) ("[T]he trial court had a duty, *sua sponte*, not to allow testimony which commented on a witness' credibility."). Finally, the state's contrary argument notwithstanding, it is difficult to envision a more explicit comment on the credibility of a witness than Reilly's challenged testimony in this case. Although Reilly's testimony was aimed at bolstering her own diagnosis that, despite S. D.'s recantation of a different accusation, S. D. had been sexually abused, that testimony entirely hinged on Reilly's view of S. D.'s credibility, and the jury could not have inferred otherwise.

The state next asserts that the admission of that testimony does not qualify for plain error review because the court would have to choose between competing inferences— "one of which is that defendant made a conscious decision not to object" to the testimony—to decide the issue. *See State v. Gornick*, 340 Or 160, 169-70, 130 P3d 780 (2006) (where the record raises an inference that a defendant may have chosen not to object for strategic reasons, there is no plain error). According to the state, defendant may have acquiesced in the admission of the challenged testimony in order to secure admission of the evidence that S. D. had previously recanted the allegation of physical abuse that she had made against her father. With respect, we disagree. It is true that a foundation for admission of the recantation evidence was Reilly's testimony concerning her diagnosis of sexual abuse. However, it is clear from the record that defendant asserted that the recantation evidence was independently admissible to impeach S. D. and that he asserted that it was conditionally relevant to impeach a diagnosis of sexual abuse by a CARES evaluator. Stated differently, defendant did not want the CARES evaluators to testify to such a diagnosis but, if the court allowed such testimony, then defendant wanted to impeach it with the recantation evidence. Thus, as respects the opinion testimony of the CARES witnesses, defendant's reliance on the recantation was purely defensive. Moreover, even if the diagnosis were admitted, no arguable additional strategic advantage could have accrued to defendant from the admission of Reilly's direct comment on S. D.'s credibility.

In short, the error was a legal error that is obvious, and this court need not go outside the record or select among competing inferences to discern it; therefore it is plain.

The question remains whether we should exercise our discretion to correct it. In determining whether to exercise our discretion to correct such an error, we consider, among other things,

> "the competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served in the case in another way[.]"

*Ailes*, 312 Or at 382 n 6. The state argues that any harm in admitting the evidence was minimal in view of its perception that defendant needed Reilly to testify as she did in order to secure the admission of S. D.'s previous recantation. As explained, that argument is misplaced. Moreover, the harm in this case was significant; because there was no physical evidence of sexual abuse, the credibility of S. D.'s allegations was at the heart of the state's case. Accordingly, we exercise our discretion to correct the error.

Reversed and remanded.