DUNCAN, J. pro tempore, dissenting.
For more than 30 years, it has been clear that, under Oregon law, "a witness, expert or otherwise, may not give an opinion on whether he believes a witness is telling the truth." State v. Middleton , 294 Or. 427, 438, 657 P.2d 1215 (1983). Applying that rule, we have held, for example, that a trial court erred by admitting testimony by a complainant's mother that she "never doubted [the complainant] for a second." State v. Vargas-Samado , 223 Or.App. 15, 17, 195 P.3d 464 (2008).
Not only does Oregon law prohibit a witness from commenting on the credibility of another witness, it requires trial courts to strike, sua sponte , vouching testimony elicited by the state or volunteered on the state's examination, unless the record shows that it is plausible that the defendant made a strategic choice not to object to the testimony. State v. Ramirez-Estrada , 260 Or.App. 312, 325, 317 P.3d 322 (2013), rev. den. , 355 Or. 317, 327 P.3d 1167 (2014). A trial court's *352 failure to do so constitutes plain error. Thus, we have held, for example, that a trial court plainly erred in failing to strike, sua sponte , a mother's testimony, volunteered during the state's examination, that her daughter, the complainant, "wasn't lying." State v. Higgins , 258 Or.App. 177, 180-81, 308 P.3d 352 (2013), rev. den. , 354 Or. 700, 319 P.3d 697 (2014).
In this case, defendant was charged with one count of sexual abuse of the complainant, B, and his defense was that B had fabricated the allegations. The case turned on the credibility of B, because the state's evidence consisted of B's testimony and the testimony of other witnesses who testified about what B had told them. One of those witnesses was Strawn, the mother of a friend of B's, D. At the outset of its direct examination of Strawn, the state elicited testimony that Strawn had a close relationship with B. Strawn testified, "I believe I know [B] pretty well. I talk to her a lot. She * * * and [D] were like inseparable for quite a while." Strawn also characterized her relationship with B as "almost *399 the same" as her relationship with her own daughter, noting that B "could talk to [her] about anything." Thereafter, when asked about her reaction to B's report that defendant had abused her, Strawn testified that she "totally believed" B. In my view, Strawn's testimony that she "totally believed" B was impermissible vouching under Vargas-Samado and Higgins , and the trial court's failure to strike it, sua sponte , was plain error under Higgins .
The state and majority do not dispute that Strawn's testimony that she "totally believed" B was impermissible vouching. But the state argues, and the majority agrees, that the trial court did not plainly err in failing to strike the testimony because defendant may have had a strategic reason for not objecting to it.
I respectfully disagree. As mentioned, it is error for a trial court to fail to strike vouching testimony elicited by the state or volunteered on the state's examination, unless the record supports a plausible inference that the defendant made a strategic choice to not object to the testimony. Ramirez-Estrada , 260 Or.App. at 320, 317 P.3d 322. The inference "must be 'plausible' in view of 'what actually occurred at trial.' " Id . at 319, 317 P.3d 322 (quoting State v. Lovern , 234 Or.App. 502, 512, 228 P.3d 688 (2010) ). A reviewing court cannot simply presume that a defendant made a tactical choice to not to object to impermissible vouching testimony. Ramirez-Estrada , 260 Or.App. at 319, 317 P.3d 322. Thus, for example, in Higgins , we rejected the state's claim that the defendant had failed to object to impermissible vouching testimony because he "might not have wanted to cause the jury to 'dwell on' " the testimony, where "nothing in the record indicat[ed] that [the] defendant made any kind of strategic choice not to object[.]" 258 Or.App. at 181, 308 P.3d 352. In Higgins , we also noted that we are "particularly reluctant" to draw an inference that a defendant failed to object to impermissible vouching testimony "in a case that rests almost entirely on the complainant's testimony." Id .
In this case, defendant's defense was that B had fabricated the allegations against him because she was angry with him and wanted attention from others. In support of his assertion that B was not credible, defendant pointed out the inconsistencies in B's statements and that neither *400 Strawn nor B's mother relayed B's reports to authorities. Given that defense, it is not plausible that defendant made a strategic choice not to object to Strawn's testimony that she "totally believed" B. That testimony was completely contrary to both defendant's general assertion that B was not credible and his specific assertion that Strawn had not believed B's report to her.
Contrary to the majority's conclusion, it is not plausible that defendant made a strategic choice not to object to Strawn's impermissible vouching testimony so that he could put Strawn's belief in B's report at issue. Defendant's assertion that Strawn did not believe B was based on Strawn's failure to relay B's report to authorities; it was not dependent on Strawn making an in-court statement about whether she believed B. Defendant was in a position to challenge Strawn's belief based on Strawn's conduct, and he would not have, by making such a challenge, "opened the door" for Strawn to engage in impermissible vouching. See *353 State v. Hollywood , 250 Or.App. 675, 676, 282 P.3d 944 (2012) (trial court's admission of nurse's testimony explaining that she diagnosed complainant as having been sexually abused, despite complainant's prior recantations of allegation of physical abuse, because "there [was] no lying going on" was plain error).
Moreover, this case is readily distinguishable from the cases relied on by the majority, in which the defendants elicited the testimony at issue. In State v. Miranda , 309 Or. 121, 128-29, 786 P.2d 155, cert. den. , 498 U.S. 879, 111 S.Ct. 212, 112 L.Ed.2d 171 (1990), the defendant himself elicited otherwise inadmissible statements during his direct examination, and the court held that, by doing so, the defendant opened the door to an inquiry on cross-examination by the state into the same statements. Similarly, in State v. Hanson , 280 Or.App. 196, 203-04, 380 P.3d 1136, rev. den. , 360 Or. 751, 388 P.3d 717 (2016), the defendant "intentionally brought up and used" the vouching testimony during his cross-examination. See also State v. Caulder , 75 Or.App. 457, 460-61, 706 P.2d 1007, rev. den. , 300 Or. 451, 712 P.2d 110 (1985) (addressing the scope of rebuttal evidence). Here, in contrast, the defendant did not elicit or use (or have any reason to elicit or use) the challenged testimony.
*401 I also disagree with the majority's conclusion that, even if the trial court erred in failing to strike Strawn's impermissible vouching testimony, we should not exercise our discretion to correct the error. We have consistently exercised our discretion to correct similar errors, due to their gravity. See, e.g. , Hollywood , 250 Or.App. 675, 282 P.3d 944 ; State v. Lopez-Cruz , 256 Or.App. 32, 299 P.3d 569 (2013) ; State v. Bahmatov , 244 Or.App. 50, 260 P.3d 592 (2011) ; State v. Almanza-Garcia , 242 Or.App. 350, 255 P.3d 613 (2011). As we have explained, in cases like this one, where there is no physical evidence of the alleged abuse and there are no eye-witnesses, the case "boil[s] down * * * to a credibility contest between the complainant and defendant," and evidence commenting on the credibility of either is "likely to be harmful." State v. Lowell , 249 Or.App. 364, 370, 277 P.3d 588, rev. den. , 352 Or. 378, 290 P.3d 814 (2012). That likelihood is increased when the witness whose testimony is at issue is held out as having a heightened ability to evaluate the complainant's testimony. Thus, in Higgins , we exercised our discretion to review the trial court's failure to strike, sua sponte , the complainant's mother's testimony that she knew the complainant "wasn't lying." 258 Or.App. at 181-82, 308 P.3d 352. As we noted, the mother was "privy to the complainant's behaviors, characteristics, and past experiences[,]" and "[t]hat fact significantly increase[d] the risk that the jury's credibility determination was affected by [her] comments." Id . at 182, 308 P.3d 352.
The majority suggests that, even if the trial court erred, we should not exercise our discretion to correct the error because this was a "bench trial." 289 Or.App. at 397-98, 410 P.3d at 351-52. I disagree. We have expressly rejected the assertion that we should assume that a trial court conducting a bench trial did not consider erroneously admitted evidence. See, e.g. , Lopez-Cruz , 256 Or.App. at 38-39, 299 P.3d 569 (holding that, in a case that is largely dependent on a complainant's credibility, a reviewing court must conclude that the admission of impermissible vouching testimony was not harmless, unless the trial court states that it did not rely on the testimony); Almanza-Garcia , 242 Or.App. at 351, 255 P.3d 613 (explaining that, although the trial court did not mention the challenged evidence in its findings of fact, its failure to do so did not mean that the court did not consider the evidence). Moreover, such an assumption *402 would be particularly unwarranted here, because the state's case depended on B's credibility, which was the subject of Strawn's impermissible vouching testimony, and because the state emphasized that testimony in its closing argument to the court.
The majority acknowledges that we have corrected the erroneous admission of vouching testimony in other cases involving bench trials, but asserts that those cases are distinguishable because they "involved vouching testimony by an expert witness." 289 Or.App. at 397 n. 1, 410 P.3d at 351 (emphasis added). It is true that Strawn was not an expert witness, in that she did not have professional expertise in the assessment of children's reports *354 of abuse, but the state presented her as someone who had personal expertise regarding B, given their close relationship. As we observed in Higgins , impermissible vouching testimony by a witness who is "privy to the complainant's behaviors, characteristics, and past experiences" carries an increased risk of affecting a factfinder's assessment of the complainant's credibility.[1]
In sum, because the trial court plainly erred by failing to strike, sua sponte , the clear vouching testimony elicited by the state in its examination of Strawn, a person whose opinion regarding the credibility of B's report could carry significant weight, I would, as we have in similar cases, reverse and remand this case.
Therefore, I respectfully dissent.

The majority suggests that, if the trial court erred in admitting Strawn's impermissible vouching testimony, this is not an appropriate case for us to exercise our discretion to review the error because the testimony is not "as dangerous" as other vouching testimony. 289 Or.App. at 397, --- P.3d at ----. In support, the majority cites Hanson . But Hanson concerned whether the record supported an inference that the defendant made a strategic choice not to object to the challenged vouching evidence, not whether it was unlikely that the evidence affected the verdict. Moreover, we based our conclusion regarding the possibility that the defendant made a tactical decision not to object on several factors, which are not present in this case, including that the challenged testimony was "not directly related to the victim's allegations of sexual abuse, but, instead, was aimed at a collateral issue" and, as discussed above, was "intentionally brought up and used by defendant on cross-examination." Hanson , 280 Or.App. at 204, 380 P.3d 1136.